## Cooper *versus* Wilson.

| 96 | 409 |
| 185 | 133 |

1. After the acknowledgment of a sheriff's deed the sheriff's sale will not be set aside for mere inadequacy of price.

2. There must be a point of time when irregularities are cured and the law fixes the acknowledgment of the sheriff's deed as that time. Were this rule to be relaxed titles might be imperiled.

November 22d 1882. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term, 1879, No. 199.

In the court below this was the petition of Francis E. Wilson of the city of Meadville, which in substance set forth: That on the 17th of May 1855, Theodore S. Minniss was the owner in fee of a lot of ground in the city of Meadville; that on the said 17th of May 1855, the said Minniss executed a mortgage on said lot to H. H. Thompson, conditioned for the payment of $400 on the 17th of May 1863; that on the 24th of March 1857, the said Minniss and wife conveyed the south half of said lot to Silas Taylor, Sr., by deed of general warranty; that on the 16th of November 1864 said Taylor conveyed the south half of said lot to your petitioner by deed, since which time your petitioner has been living on said lot; that a sci. fa. on said mortgage was issued to August term 1875, and returned July 2d 1875, served personally on defendant, Clara S. Minniss, administratrix of the estate of Theodore S. Minniss, deceased, on which sci. fa. the said administratrix appeared January 11th 1877, and confessed judgment for $410; that a writ of levari facias on said judgment was issued to

February term 1879, on which the whole of said lot was sold February 8th 1879, to Ezra Cooper, for the sum of $756, and a sheriff's deed therefor acknowledged to him February 13th 1879. The petitioner further represents that he never knew of the existence of said mortgage; that no writ or process of any kind was ever served on him with reference thereto, and that he had no knowledge that his property had been sold until Friday February 21st 1879; that the title to the north half of said lot remained until said sheriff's sale in the estate of the said Theodore S. Minniss, and that said north half of said lot is worth more than said Cooper gave for the whole lot. The petitioner is informed and believes that said purchase was made by said Cooper in the interest of the estate of said Theodore S. Minniss, and with intent to procure title to the property of the petitioner. The petitioner therefore prays the court to strike off the confirmation of said sheriff's deed, and to set aside said sheriff's sale for the purpose of enabling the petitioner to protect the title to his property; and to the end that no rights may be prejudiced the petitioner offers, in case said sale is set aside, an irrevocable bid of $900 for the north half of said lot of ground, when an order of court directs that that part of the mortgaged premises be first sold.

The court, Church, P. J., filed the following opinion and order:

"On the 17th of May 1855, Theodore S. Minniss was the owner of lot No. 308, being 50 feet by 200 feet, situate on the southwest corner of Liberty and Arch streets, in the city of Meadville. On that day he mortgaged these premises to these plaintiffs. On the 24th of March 1857 he conveyed the south half of the premises aforesaid to one Silas Taylor. On the 16th of November 1864 they conveyed the same to Francis E. Wilson, the petitioner in this case. Wilson went into possession at once, built a house thereon, and has remained in possession from then to the present.

"On the above mentioned mortgage proceedings began in 1875 to foreclose the same, and in 1877 judgment was confessed thereon by this defendant, and on the 13th February, of the present year, the whole mortgaged premises were sold by virtue of levari facias issued thereon, and purchased by one Ezra Cooper, who was not the plaintiff in the writ, but who was the friend of and became the purchaser for the benefit of the defendant in the writ. The deed was acknowledged by the sheriff, and after registry was sent by the prothonotary to Cooper by mail. This sale included the premises sold by the mortgagor twenty-two years ago under which Wilson claims. Two days after acknowledgment of the sheriff's deed Wilson applied to the court to set the sale aside, and also the acknowledgment of the sheriff's deed. This was done at the same term, or as soon as Wilson heard the facts, and after the deed had been sent by the prothonotary to Cooper, but before the lapse of

[Cooper *v.* Wilson.]

time which usually occurs in this county between the acknowledg-- ment of a sheriff's deed and its final delivery to the purchaser.

" We are asked to set this sale aside on account of gross inade- quacy of price; that the confession of judgment by the widow of the mortgagor without notice to the terre-tenant, twenty years after the mortgagor had parted with his title, was a gross fraud on the rights of the terre-tenant, and because no proper notice was given of the sale, and because of fraud, accident and mistake in the fact of every one connected with the transaction.

" It appears in evidence, and the court so find, that the whole property was worth from $3000 to $3500, and that it sold for $766. The north half still is there, belonging to the defendant in the mortgage proceeding, is worth $1000, and this applicant offers an irrevocable bid of $900 for that share.

" While mere inadequacy of price is not ordinarily sufficient to set aside a sale after the acknowledgment of plaintiff's deed it should be considered in connection with other circumstances in the case. Among these other circumstances is the fact, as appears from the evidence taken, that the sheriff did not advertise the sale properly. No handbills were put up on the south half. It was separate and distinct from the other, made so since the giving of the mortgage by the act of the parties in such purchase and improvement of this south half. It was as much separate and dis- tinct as any other property requiring it, and the notice required by law should have been given, if it was intended that the property of the terre-tenant should be sold. But in truth and in fact it was not intended to be sold. Mrs. Minniss, the defendant, testifies that she did not know the whole lot, that is the terre-tenants' half, was being sold, and that Cooper, the purchaser, did not know the whole was being sold. Mr. Cooper testifies to the same thing; that the property was advertised as a house and lot, and he sup- posed he was himself buying Mrs. Minniss's house and lot, and the house and lot of no one else. The sheriff did not know it, nor did the plaintiff know it. The sheriff took his description from the old mortgage, and of course did not describe two lots and two houses, as seem to have been in fact sold.

" To say nothing of fraud (and there does not seem to have been any fraud contemplated until the sheriff had acknowledged his deed, and the subsequent events do nevertheless smack strongly of it), the whole transaction presents as clear a case of accident and mis- take as is often brought to the attention of a court of justice.

" It would be most unconscionable to permit this sale to stand. If it is claimed the courts are powerless to remedy the evil com- plained of, the judges may as well retire from the bench and close the doors of the court.

" It is possible that no authority can be found deciding directly and positively on the power of a court to set aside the acknowledg-

[Cooper *v.* Wilson.]

ment of a sheriff's deed after it has been delivered; but the reasoning to be found in Jackson *v.* Morter, 1 Norris 294, and cases therein cited, would seem to fully justify not only the right but the power of the court to set aside a sheriff's deed after acknowledgment and after delivery on the ground of fraud actual or equitable. Courts of equity have the power to set aside, cancel, annul or reform a private indenture on the ground of fraud, accident or mistake. Why even in a greater degree have they not the power to set aside or reform the deed of one of their own officers? There is nothing so sacred about a sheriff's deed as to prevent the same principles of right and equity being invoked as in the case of private writings executed with all the solemnity required by our laws. In applications of this kind to avoid a sheriff's sale much must depend on whether the sale or acknowledgment was made through fraud, and with what promptness the application is made. In this case the application was made at the same term, and the moment the applicant could obtain a hearing in court, and before ordinary routine would put the purchaser in possession of the deed. What induced the haste in the purchaser to get possession of the deed does not appear in evidence, but is left to conjecture. Indeed, from the evidence, I question very much whether the deed was ever effectually and properly delivered. A sheriff's deed ought to be delivered by the sheriff and not by the prothonotary, as was done in this case.

"Upon the ground, then, of insufficiency of notice of sale, inadequacy of price for which the property sold, fraud (unwitting fraud if you please, but none the less fraud) practised on the terre-tenant, accident, it might be, on the part of the sheriff, plaintiff, defendant and purchaser in the including of the purpart of the terre-tenant in the deed, we set aside the acknowledgment of the sheriff's deed in this case to Ezra Cooper, and set aside the sale thereof, and cancel and annul and direct that he deliver up the deed to the sheriff to be cancelled; and do further direct that when the north half of the property is again offered for sale it be put up at the bid of F. E. Wilson of $900; that the sheriff be ordered to amend the return to his writ accordingly; that on second sale of the said property he bring the money into court for distribution for the purpose of returning the amount of the present bid to the present purchaser.

"The prothonotary is directed to note an abstract of this order on the margin of the page wherein is recorded or registered this deed in question. The costs of this proceeding to be paid by F. E. Wilson, the petitioner."

The order of the court was assigned for error by Cooper, who took this writ.

*William R. Bole,* for plaintiff in error.—After the acknowledg-

[Cooper *v.* Wilson.]

ment of the sheriff's deed in open court, the title of the sheriff's vendee cannot be affected by mere irregularities however gross. Nothing but fraud in the sale or want of authority to sell can defeat his title: McFee *v.* Harris, 1 Casey 102; Crowell *v.* McClosky, 5 Barr 168; Gibson et al. *v.* Winslow, 2 Wright 49; Stewart *v.* Freeman, 10 Harris 120; Slater's Appeal, 4 Casey 169. The purchaser was not bound to look beyond the description contained in the mortgage: Gibson *v.* Winslow, *supra;* Magaw *v.* Garrett, 1 Casey 322. When a sheriff's deed is acknowledged is the proper time for persons interested in the sale to take advantage of irregularities: Shields *v.* Miltenberger, 2 Harris 76; Spragg *v.* Shriver, 1 Casey 282. The court will not attempt to disturb the title of a purchaser at sheriff's sale for any formal defect in the proceedings after acknowledgment and delivery of the sheriff's deed.

*John J. Henderson*, for defendant in error.—The court clearly has the power to set aside the sale on such a state of facts as here shown. In Jackson *v.* Morter, 1 Norris 294, Justice MERCUR says on this subject: " That it may exercise a like power after acknowledgment, but at the same term appears to be conceded by the authorities." In that case two terms had intervened before the application was made to set the sale aside, and the sheriff's deed was in the hands of the purchaser. Even if the deed had been legally delivered in this case the opinion of the court, in the case referred to, would justify the action of the court below. Whether a sheriff's sale could be set aside after the term at which the deed was acknowledged, and after the delivery of the deed to the purchaser was not determined in that case, although the opinion of the court would seem to indicate that it might even then if the application was made promptly and it was meritorious.

The cases cited by the counsel for plaintiff in error were actions of ejectment where effort was made to attack sheriff's sales collaterally. None of them relate to the question of the power of the court to set aside a sheriff's sale.

Mr. Justice PAXSON delivered the opinion of the court, January 24th 1881.

This is an admittedly hard case. The court below found as a fact that the property was worth from $3000 to $3500, and that it was sold by the sheriff for $766. Upon the petition of the terre-tenant the court set aside the sheriff's sale after the deed had been acknowledged and delivered to the purchaser, and the purchase-money paid. The order further directed the purchaser to deliver up his deed to the sheriff to be cancelled, without any direction for the return of the purchase-money until after a re-sale of the premises.

[Cooper *v.* Wilson.]

We must be careful that in order to remedy a case of hardship we do not strain the law. Such cases always make bad precedents, and in the end do more harm than the particular mischief sought to be redressed.

It is a familiar principle that a sheriff's sale will not be set aside for mere inadequacy of price: Weitzell *v.* Fry, 4 Dallas 218; Carson's Sale, 6 Watts 140; Swires *v.* Brotherline, 5 Wright 135. It is true in a clear case of inadequacy of price the court will seize hold of a slight irregularity to set aside the sale. But mere irregularities are cured by the acknowledgment of the sheriff's deed: Crowell *v.* Maconkey, 5 Barr 168; Spragg *v.* Shriver, 1 Casey 282; Shields *v.* Miltenberger, 2 Harris 76.

It is perhaps a subject of regret that the same rule does not prevail in regard to sheriff's sales as has long existed in the Orphans' Court, where inadequacy of price is recognised as a sufficient reason for setting aside a sale. But we must take the law as we find it.

We have looked through this record in vain to find something upon which we could sustain the action of the court below. The property was sold under a valid judgment, and upon legal process. The sale was duly advertised and a bill posted upon the premises. It is true no bill was posted upon the half of the lot owned by Cooper, the terre-tenant. The writ followed the mortgage and described it as one property. We have no doubt that relief might have been granted for the misdescription, had an application been made in proper time. But it was too late after acknowledgment and delivery of the deed and payment of the purchase-money. There must be a point of time when such irregularities are cured. The law fixes the acknowledgment of the sheriff's deed as that time. Were we to relax this rule we might imperil titles.

There was no fraud on the part of the purchaser. The court below concedes that he contemplated no fraud until after the sheriff's sale. If this be so, and there is nothing in the case to gainsay it, the mere fact that the purchaser was disposed to hold on to an unexpectedly good bargain does not make out a case of such fraud as the law can recognise. It is a matter that he must settle with his conscience.

Nor can fraud be inferred from the confession of judgment upon the scire facias without the knowledge of the terre-tenant. The latter took the property subject to the mortgage. It was upon record and was a lien on his property. That he did not know of its existence is not to the purpose. He had record notice and that is sufficient. His ignorance upon this point was the result of his own negligence, and is the source of all his trouble. Had he examined his title when he acquired it he would have discovered the mortgage. This would have been notice that his property was liable to a sale by the sheriff at any time. While the law protects

[Cooper *v.* Wilson.]

the rights of every citizen when arrested at the proper time and in the proper way, it cannot undertake to correct all the evils which are the result of supine negligence.

I have already adverted to the fact that while the order of court directs the purchaser to deliver up his deed for cancellation, there is no provision for a return of the purchase-money until after a re-sale of the property. In the meantime he is kept out of it as a species of forced loan. There is no authority for this, and yet it is manifest the court below could not have coupled the order for cancelling the deed with an order for the return of the purchase-money, for the reason that the money had been paid to the plaintiff in the writ. Having received it lawfully, and been guilty of no fraud it was beyond the power of the court below to order him to restore it. The effect of the receipt of the money by the plaintiff was to satisfy the writ as well as the judgment upon which it was issued. Both the writ and the judgment were dead, and in this state of the record it is difficult to see how they could be galvanized into life for the purpose of re-selling the property.

The record does not show that notice of the application to set aside the sale was given to any one but the purchaser. Yet all the parties were entitled to notice. The order of court directs the sheriff to amend his return to the writ, upon a rule to which he was not a party, and of which he had no notice. For the truth of his return the sheriff is responsible upon his official bond. The sheriff may amend his return by leave of court, but I have never known him ordered to do so. We do not reverse, however, by reason of these irregularities; our object is to call attention to them that they may be avoided in the future.

The order of June 27th 1879, setting aside the sheriff's sale, is reversed at the costs of the petitioner.